COUNXEL

*2222 S. Dobson Rd Suite 1104*
*Mesa, Arizona 85202*
*Office: (480) 536-6122*
*www.counxel.com*
**For Court Use Only: docketing@counxel.com**
Anthony Saccocio (038427)
Asaccocio@counxel.com
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matteo Mastrovalerio, an individual, | Case No: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Marriott International, Inc., A foreign corporation, ABC Partnerships I-X; ABC Limited Companies I-X, and XYZ Corporations I-X, | |
| Defendants. | |

**COMES NOW** the Plaintiff MATTEO MASTROVALERIO, ("Plaintiff" or "Mr. Mastrovalerio") by and through undersigned counsel Counxel Legal Firm (Anthony Saccocio, Esq.) and hereby alleges the following against Defendant MARRIOTT INTERNATIONAL INC. ("Marriott" or "Defendant") for breach of contract, breach of the implied covenant of good faith and fair dealing, retaliation, and unjust enrichment.

## I.     PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff, Matteo Mastrovalerio, is an individual and was at all times relevant to this matter a resident of Pima County, Arizona.

2. The Defendant, Marriott International Inc. is a corporation authorized to do business in Pima County, Arizona.

3. The actions giving rise to this complaint occurred in Pima County, Arizona.

4. Venue is proper in this court because the Defendant conducts business in Pima County, Arizona.

## II.     GENERAL ALLEGATIONS

5. Plaintiff was employed by Marriott for over 29.5 years. Plaintiff began as an "Engineer I" in 1987 at the Marriot Hotel and Marina in San Diego, California (now the Marriott Marque San Diego Hotel and Marina). After working in San Diego, Plaintiff was promoted in the company to Chief Engineer at Marriott's Mountain Shadows in Scottsdale, Arizona. After six months at Mountain Shadows, Plaintiff was promoted to Acting Director of Engineering.

6. In 1997 Plaintiff was again promoted to Executive Director of Engineering and Facilities Operation of the newly built Marriott Suites Hotel in Las Vegas, Nevada.

7. From 1998 until 2010 the Plaintiff assisted in the construction, opening, hiring, and general operation of at least 9 new Marriott Hotel properties in Las Vegas.

8. In 2013, Plaintiff took a position as Regional Director of Engineering and Facilities with Diamont Resorts International.

9. Following his work at Diamond Resorts International, Plaintiff came back to Marriott as an Engineering Manager and Area Business council Director of Facilities at the Marriott Hotel and another five hotels managed by Marriott in Las Vegas.

10. On or about August 27, 2018 Mr. Mastrovalerio transferred to JW Marriott's Tucson, Arizona location as the Executive Director of Engineering and Loss Prevention. (A copy of the Plaintiff's employment agreement is attached herein as **Exhibit "A"**).

11. In his role as an Executive Director of Engineering and Loss Prevention, Plaintiff frequently earned accolades from his superiors, was always been well-liked by his associates, and maintained a good relationship with his peers and those whom he supervised and overall had a good working relationship with everyone at Marriott. Such relationships are demonstrated by the Plaintiff's exemplary disciplinary record. Indeed, prior to 2021, Mr. Mastrovalerio had never received any reprimand or subject to any disciplinary measures.

12. However, it was on or about November 5, 2021 that Mr. Mastrovalerio's relationships with his co-workers and supervisors began to deteriorate. On one occasion, Mr. Mastrovalerio's immediate supervisor, Dean Callahan, asked the Plaintiff a question, and the Plaintiff informed Mr. Callahan that he would have to speak up because he is hard of hearing, to which Mr. Callahan said, "you need to do something about that." Obviously, there is no corrective action Mr. Mastrovalerio can take related to his disability.

13. Moreover, following correspondence from Mr. Mastrovalerio on or about August 5, 2021 that communicated his hearing loss by way of a physician note, Mr. Callahan as well as other administrators knew or should have known that Mr. Mastrovalerio was at that

time disabled. However, despite having this knowledge, Mr. Callahan opted to harass the Plaintiff. (A copy of the doctor's note provided to Vanesa Zuzuarregui; director of Human Resources Operations is attached herein as **Exhibit "B"**).

14. On another occasion, Plaintiff was accused of watching pornographic material on his company computer at work. Mr. Mastrovalerio was shocked to learn about this accusation but nevertheless cooperated in Marriott's investigation wherein he was cleared of any misconduct. Plaintiff also submits that this investigation was overly intrusive as he was questioned about personal sexual preferences within his own home.

15. However, the genesis of the instant action occurred on February 9, 2022. On that date, the Plaintiff was struck at an intersection by an oncoming vehicle. Upon information and belief, the driver of the vehicle and his co-worker were racing to a job site and it was this "race" that led to their running a red light and injuring the Plaintiff.

16. The Plaintiff's injuries were life threatening and very severe. Since the collision, the Plaintiff has required three (3) brain surgeries, as well as three (3) heart surgeries and two (2) knee surgeries. The Plaintiff still suffers major lasting effects of his injury, both mentally and physically.

17. Mentally, the Plaintiff has suffered short-term memory loss, experienced difficulties speaking and overall diminished mental capacity including difficulties in speech word order, additional hearing loss, vision loss, and vertigo. Physically, the Plaintiff has great trouble standing for long periods of time, walking, and going up and down stairs, has suffered a general loss of physical strength and has developed diabetes and high blood

pressure, as well as an irregular heartbeat (atrial fibrillation) that requires frequent observation and medication. It is expected that Mr. Mastrovalerio will live with these afflictions for the remainer of his life.

18. As a result of this accident, the Plaintiff was unable to return to his position at Marriott until July 17, 2022 while he healed from his original injuries, submitted to the resultant surgeries stemming from the initial injuries, and commenced rehabilitation.

19. Although Mr. Mastrovalerio was enthusiastic about his return to work, and despite his best efforts, due to the lingering effects from his injuries, he was unable to work a full week. Plaintiff requested utilization of Marriott's "Flexible Working Arrangement," but was informed that he did not qualify based on his Associate Engagement Survey known as "AES" or "ES" score[1].

20. Moreover, Plaintiff was warned by Mr. Callahan that anyone could be removed from the company by the owner at any time, and without warning.

---

[1] Plaintiff's ES score in 2018 was 50%, this 2018 score was from the previous Director of Engineering score and not the Plaintiff's score as the ES was completed in June 2018 and Plaintiff arrived in August 2018. In 2019 it was 82%, there was no ES score in 2020 and in 2021 his ES score was 59%. The reason for the drop in score can be attributed to Covid-19 layoffs, budget cut of engineering staffing department only while the hotel was running 100% occupancy and resultant low wage pay.

21. For the time he was present at work, he requested reasonable accommodations from Marriott, but none were provided. Among the requests for reasonable accommodations were the following:

    i. Marriott minimize his walking, stair climbing, and prolonged standing;
    ii. Marriott minimize his heavy lifting; and
    iii. Marriott minimize prolonged positions

22. One specific request from Plaintiff was for his office to be moved from the second floor to the first floor so as to minimize his climbing stairs. This request was denied by Marriott.

23. Upon Plaintiff's return, Mr. Callahan frequently called him to his office rather than communicating via phone or email or video conference. Upon information and belief, the trip to Mr. Callahan's office from his own was two floors and approximately 1/3 of a mile.

24. When Plaintiff expressed the challenges in taking the stairs, Defendant's response was to merely point out that he was still making the trip and therefore he could "do it."

25. On another occasion the Plaintiff was asked by Mark Ochoa during an executive meeting, in the presence of all other executives, if he "carried a drug store in [his] pocket" due to the medication he was required to take on a daily basis.

26. On or about October 1, 2022, a Marriott employee alleged that Plaintiff became combative with a vendor, Austin Mazor, and that he made an antisemitic remark toward him. Mr. Mastrovalerio could not recall clearly having a conversation with Mr. Mazor but denied having any argument and further denied making this remark. However, the

subsequent investigation determined the remarks were in fact made. On or about October 21, 2022 the Plaintiff was terminated from his position.

27. Mr. Mastrovalerio has and continues to deny this accusation in its entirety and affirms that he and Mr. Mazor continue to have a friendly relationship. Plaintiff maintains that he did not make this remark to any employee and furthermore, states that the employee in question was not at work that day and had not been there for some time prior to October 1, 2022. During the course of the investigation Plaintiff asked Marriott to contact the employee so he might confirm his version of events, but Marriott declined to do so.

28. During the investigation, Plaintiff also communicated his upbringing wherein he regularly attended Hanukkah and other Jewish celebrations with his family members who are Jewish and that he holds no antisemitic feelings whatsoever. Plaintiff has in fact made several donations to Jewish organizations including the Holocaust Museum on Los Angeles since 1986.

29. Despite his exemplary record for nearly 30 years at Marriott, Plaintiff was not given the opportunity for a punishment less severe than termination. The Plaintiff was not afforded the opportunity to take sensitivity training in place of termination, nor was he afforded any kind of less severe disciplinary action such as suspension without pay.

30. Marriott was made entirely aware of Mr. Mastrovalerio's short-term memory loss and *used that fact in their adjudication, stating that he did not deny using antisemitic language when he stated he could not remember clearly the interaction*.

7

31. Upon information and belief, Marriott failed to contact the individual with whom the Plaintiff is alleged to have argued with.

32. Although Marriott interviewed the Loss Prevention Officer who is alleged to have heard the remark, his recollection differs considerably from Mr. Mastrovalerio. Upon information and belief, Mr. Mastrovalerio was given no explanation as to why the Loss Prevention Officer's version of events has been given substantially more weight than his own.

33. Mr. Mastrovalerio timely filed a complaint with the EEOC following his dismissal. His right to sue letter was received on or about September 28, 2023.

34. Presently, Mr. Mastrovalerio is employed as a worker at Lowe's Home Improvement.

### III.   COUNT I: FAILURE TO ACCOMMODATE A CLAIM

35. Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

36. Mr. Mastrovalerio has sustained severe injuries from an accident on or about February 9, 2022, resulting in multiple surgeries and enduring physical and mental impairments. These impairments include, but are not limited to:

      i. Short-term memory loss;
     ii. Vertigo;
    iii. Difficulty standing, walking, and climbing stairs;
    iv. A general loss of physical strength

37. The above conditions severely limit Mr. Mastrovalerio's ability to perform major life activities, such as walking, speaking, and working, categorically qualifying him as a person with a disability under the ADA.

38. Following his accident, the Plaintiff returned to his role on or about June 17, 2022, demonstrating his willingness and capability to resume his professional duties. Mr. Mastrovalerio possesses extensive experience, skills, and education having worked for Marriott for nearly 30 years I various engineering and management capacities. In this regard, Mr. Mastrovalerio is "qualified" under the contemplation of the ADA.

39. Marriott was explicitly informed of the Plaintiff's disabilities substantiated by **Exhibit B** referenced above as well as direct communication.

40. Despite Marriott's awareness, they failed to provide necessary and reasonable accommodations to Mr. Mastrovalerio such as those presented above such as minimizing walking, stair climbing, and particularly the relocation of his office to the first floor to avoid stairs. These requests were either ignored or not addressed.

41. Marriott's actions, including requiring Mr. Mastrovalerio to attend meetings on different floors and ignoring his accommodation requests, directly contravened the ADA's requirements for employers to modify work conditions and practices to accommodate employees with disabilities.

42. The failure to accommodate Mr. Mastrovalerio's disability no only impeded his ability to perform his job effectively, but also contributed to a work environment

unsupportive and non-accommodative of his disability related needs and ultimately led to his improper termination.

### IV.    COUNT II:  RETALIATION

43. Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

44. The Plaintiff alleges that he engaged in a protected activity when he asked for reasonable accommodation to alleviate the difficulty, he faced walking long distances and up and down stairs. The plaintiff requested a new location for his office and for fewer in-person meetings (to be completed via telephone or video conference). Neither were granted.

45. Following his request for said reasonable accommodation, the Plaintiff suffered an adverse employment action when he was terminated on or about October 21, 2022.

46. Plaintiff submits that the timing of his termination, considered alongside his return to work and his requested accommodation demonstrates a premeditated decision based upon improper reasoning. The Plaintiff wishes to reiterate that he had spent nearly 30 years with Marriott, however, following his return to work in July of 2022 he was terminated only 3 months later, demonstrating a link between his request for accommodation and his termination.

### V.    SUPPLEMENTAL JURISDICTION UNDER 28 U.S.C. § 1367

47. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The state law claims form part of the same case or controversy as the claims arising under the ADA, which provides this court with original jurisdiction.

10

### VI. COUNT III: BREACH OF CONTRACT

48. Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

49. Plaintiff hereby alleges that a valid and binding employment contract existed between the Plaintiff and Marriott for Plaintiff's employment.

50. Plaintiff hereby alleges that this employment contract specified the terms and conditions under which the Plaintiff could be terminated from his position.

51. The termination of Mr. Mastrovalerio's employment was influenced by the Plaintiff's post-accident disability and resultant work capacity, and not on the alleged antisemitic remark as Marriot claims.

52. Plaintiff hereby alleges that Plaintiff has been damaged by Defendant breaching the employment contract in an amount to be determined at trial.

53. Therefore, Defendant is liable to Plaintiff for Breach of Contract.

### VII. COUNT IV: BREACH OF IMPLIED COVENANT

54. Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

55. Plaintiff alleges that a valid and binding employment contract existed between the Plaintiff and the Defendant for the Plaintiff's employment.

56. Additionally, Plaintiff alleges that all contracts under Arizona law carry an implied covenant of good faith and fair dealing whereby neither party shall act to deny the other the rights and benefits of the contract.

57. Marriott breached the employment contract by terminating the Plaintiff without cause when it was worried that it could not accommodate Plaintiff's disability requests.

58. Plaintiff hereby alleges that by terminating Plaintiff without cause, the Defendant has acted in a way that denies Plaintiff the rights and benefits of the employment contract.

59. Plaintiff hereby alleges that he has been damaged by the Defendant breaching the employment contract.

60. The Defendant is liable to Plaintiff for Breach of the Implied Covenant of Good Faith and Fair Dealing.

### VIII.   COUNT V:  UNJUST ENRICHMENT

61. Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

62. The Plaintiff alleges that the Defendant benefitted from the Plaintiff's more 29.5 years of service and the goodwill he built with his colleagues and superiors. The Plaintiff has provided valuable services to Marriott, continuing to improve and maintain Marriott properties even after his accident left him disabled.

63. Marriott accepted and benefitted from these services, which grew its earnings, and increased its value.

64. The Plaintiff's abrupt and unjust termination, based on unfounded allegations, allowed the Defendant to avoid paying the financial obligations that would be due to a long-term employee and the incorrect presumption that the Plaintiff would be unable to contribute meaningfully to the organization.

65. Plaintiff hereby alleges that Plaintiff has been impoverished by Defendant wrongfully terminating him in violation of the employment contract and/or in violation of the covenant of good faith and fair dealing.

66. Plaintiff hereby alleges there is a connection between the enrichment and the impoverishment as both arise out of Plaintiff's wrongful termination by Defendant.

67. As a direct and proximate result of Marriott's unjust enrichment, the Plaintiff has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, having fully pled this Complaint the Plaintiff prays the following relief from the Court:

   A. For all damages allowable at law under any and all theories applicable including actual, consequential, compensatory, liquidated and punitive damages in an amount to be determined at trial but for not-less-than $525,404.88;

   B. A change in Plaintiff's status with Marriott from "Terminated" to "Resigned" or similar verbiage.

   C. For an award of all Plaintiff's costs and attorney's fees incurred in this action under any and all applicable legal theories;

   D. For any and all other relief that is just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that upon trial of this action, all issues be submitted to and determined by a jury except those issues expressly reserved by law for determination by the Court.

RESPECTFULLY SUBMITTED this 26th day of December 2023

        **COUNXEL LEGAL FIRM**
        */s/ Anthony Saccocio*
        Anthony Saccocio
        2222 S. Dobson Rd. Suite 1104
        Mesa, AZ  85202
        *Attorney for Plaintiff*

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2023, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF Registrant:

*/s/ Carolyn Button*