COUNXEL

*2222 South Dobson Road Suite 1104*
*Mesa, Arizona 85202*
*Office: (480) 536-6122*
*www.counxel.com*
**For Court Use Only: docketing@counxel.com**
Timothy F. Coons (031208)
TCoons@counxel.com
Cameron Mitchell (035735)
CMitchell@counxel.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Matteo Mastrovalerio, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>Marriott International, Inc., A foreign corporation, ABC Partnerships I-X; ABC Limited Companies I-X, and XYZ Corporations I-X,<br><br>  Defendants. | No. 4:23-cv-00577-CKJ<br><br>**AMENDED COMPLAINT** |

**COMES NOW** the Plaintiff MATTEO MASTROVALERIO, ("Plaintiff" or "Mr. Mastrovalerio") by and through undersigned counsel Counxel Legal Firm (Cameron Mitchell, Esq.) and hereby alleges the following against Defendant MARRIOTT INTERNATIONAL INC. ("Marriott" or "Defendant") for breach of contract, breach of the implied covenant of good faith and fair dealing, retaliation, and unjust enrichment.

### I.   PARTIES, JURISDICTION, AND VENUE

1.   The Plaintiff, Matteo Mastrovalerio, is an individual and was at all times relevant to this matter a resident of Pima County, Arizona.

2. The Defendant, Marriott International Inc. is a corporation authorized to do business in Pima County, Arizona.

3. Defendant employs at least 50 employees at Plaintiff's workplace.

4. The actions giving rise to this complaint occurred in Pima County, Arizona.

5. Further, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617, because this is a civil action arising under the Family and Medical Leave Act (FMLA) (29 U.S.C. §2601, et seq.).

6. Venue is proper in this court because the Defendant conducts business in Pima County, Arizona.

## II.    GENERAL ALLEGATIONS

7. Plaintiff was employed by Marriott for over 29.5 years. Plaintiff began as an "Engineer I" in 1987 at the Marriot Hotel and Marina in San Diego, California (now the Marriott Marque San Diego Hotel and Marina). After working in San Diego, Plaintiff was promoted in the company to Chief Engineer at Marriott's Mountain Shadows in Scottsdale, Arizona. After six months at Mountain Shadows, Plaintiff was promoted to Acting Director of Engineering.

8. In 1997 Plaintiff was again promoted to Executive Director of Engineering and Facilities Operation of the newly built Marriott Suites Hotel in Las Vegas, Nevada.

9. From 1998 until 2010 the Plaintiff assisted in the construction, opening, hiring, and general operation of at least 9 new Marriott Hotel properties in Las Vegas.

10. Between 2005 and 2013, Plaintiff also worked on the new construction, opening and operating Defendant's Grand Chateau, located in Las Vegas, as the Executive Director of Facilities Engineering and Development.

11. In 2013, Plaintiff took a position as Regional Director of Engineering and Facilities with Diamont Resorts International.

12. Following his work at Diamond Resorts International, Plaintiff came back to Marriott as an Engineering Manager and Area Business council Director of Facilities at the Marriott Hotel and another five hotels managed by Marriott in Las Vegas.

13. On or about August 27, 2018 Mr. Mastrovalerio transferred to JW Marriott's Tucson, Arizona location as the Executive Director of Engineering and Loss Prevention. (A copy of the Plaintiff's employment agreement is attached herein as **Exhibit "A"**).

14. Similar to his previous promotions and success, in his role as an Executive Director of Engineering and Loss Prevention, Plaintiff frequently earned accolades from his superiors (Mr. Russ Bond), was always been well-liked by his associates, and maintained a good relationship with his peers and those whom he supervised and overall had a good working relationship with everyone at Marriott. Such relationships are demonstrated by the Plaintiff's exemplary disciplinary record.

15. Indeed, prior to 2021, Mr. Mastrovalerio had never received any reprimand or subject to any disciplinary measures.

16. Plaintiff was furloughed due to Covid 19 in March of 2020. Leading up to this time, his supervisor was Mr. Russ Bond. In June of 2020 Mr. Bond retired from

Marriott and Mr. Dean Callahan came to the Hotel as General Manager in August 2020. Plaintiff was not brought back from furlough until December 22, 2020.

17. During Plaintiff's tenure, Plaintiff's work performance met or exceeded Defendant's legitimate expectations, as shown through continued records, reviews, and promotions.

18. However, it was on or about November 5, 2021, that Mr. Mastrovalerio's relationships with his co-workers and supervisors began to deteriorate. On one occasion, Mr. Mastrovalerio's immediate supervisor, Dean Callahan, asked the Plaintiff a question, and the Plaintiff informed Mr. Callahan that he would have to speak up because he is hard of hearing, to which Mr. Callahan said, "you need to do something about that." Obviously, there is no corrective action Mr. Mastrovalerio can take related to his disability.

19. Moreover, following correspondence from Mr. Mastrovalerio on or about August 5, 2021, that communicated his hearing loss by way of a physician note, Mr. Callahan as well as other administrators knew or should have known that Mr. Mastrovalerio was at that time disabled. However, despite having this knowledge, Mr. Callahan opted to harass the Plaintiff. (A copy of the doctor's note provided to Vanesa Zuzuarregui; director of Human Resources Operations is attached herein as **Exhibit "B"**).

20. On another occasion, Plaintiff was accused of watching pornographic material on his company computer at work. Mr. Mastrovalerio was shocked to learn about this accusation but nevertheless cooperated in Marriott's investigation wherein he was cleared of any misconduct. Plaintiff also submits that this investigation was overly intrusive as he was questioned about personal sexual preferences within his own home.

4

21.     However, the genesis of the instant action occurred on February 9, 2022. On that date, the Plaintiff was struck at an intersection by an oncoming vehicle. Upon information and belief, the driver of the vehicle and his co-worker were racing to a job site, and it was this "race" that led to their running a red light and injuring the Plaintiff.

22.     The Plaintiff's injuries were life threatening and very severe. Since the collision, the Plaintiff has required three (3) brain surgeries, as well as three (3) heart surgeries and two (2) knee surgeries, and many other injuries and medical procedures. The Plaintiff still suffers major lasting effects of his injury, both mentally and physically.

23.     Mentally, the Plaintiff has suffered short-term memory loss, experienced difficulties speaking and overall diminished mental capacity including difficulties in speech word order, additional hearing loss, vision loss, and vertigo. Physically, the Plaintiff has great trouble standing for long periods of time, walking, and going up and down stairs, has suffered a general loss of physical strength and has developed diabetes and high blood pressure, as well as an irregular heartbeat (atrial fibrillation) that requires frequent observation and medication. It is expected that Mr. Mastrovalerio will live with these afflictions for the remainer of his life.

24.     As a result of this accident, the Plaintiff was unable to return to his position at Marriott until July 17, 2022, while he healed from his original injuries, submitted to the resultant surgeries stemming from the initial injuries, and commenced rehabilitation.

25.     Plaintiff informed Defendant of his need and use of FMLA leave and ultimately utilized FMLA leave for the period of time in which he required to recover from his extensive injuries.

26. Plaintiff returned from his FMLA leave and resumed his role, and although Mr. Mastrovalerio was enthusiastic about his return to work, and despite his best efforts, due to the lingering effects from his injuries, he was unable to work a full week. Plaintiff requested utilization of Marriott's "Flexible Working Arrangement," but was informed that he did not qualify based on his Associate Engagement Survey known as "AES" or "ES" score[1].

27. Defendant, by and through Plaintiff's supervisors, become overly critical of Plaintiff's work performance.

28. Moreover, Plaintiff was warned by Mr. Callahan that anyone could be removed from the company by the owner at any time, and without warning.

29. For the time he was present at work, he requested reasonable accommodations from Marriott, but none were provided. Among the requests for reasonable accommodations were the following:

  i.  Marriott minimize his walking, stair climbing, and prolonged standing;

  ii. Marriott minimize his heavy lifting; and

  iii. Marriott minimize prolonged positions

30. One specific request from Plaintiff was for his office to be moved from the second floor to the first floor so as to minimize his climbing stairs. This request was denied by Marriott.

---

[1] Plaintiff's ES score in 2018 was 50%, this 2018 score was from the previous Director of Engineering score and not the Plaintiff's score as the ES was completed in June 2018 and Plaintiff arrived in August 2018. In 2019 it was 82%, there was no ES score in 2020 and in 2021 his ES score was 59%. The reason for the drop in score can be attributed to Covid-19 layoffs, budget cut of engineering staffing department only while the hotel was running 100% occupancy and resultant low wage pay.

31. Upon Plaintiff's return, Mr. Callahan frequently called him to his office rather than communicating via phone or email or video conference. Upon information and belief, the trip to Mr. Callahan's office from his own was two floors and approximately 1/3 of a mile.

32. When Plaintiff expressed the challenges in taking the stairs, Defendant's response was to merely point out that he was still making the trip and therefore he could "do it."

33. On another occasion the Plaintiff was asked by Mark Ochoa during an executive meeting, in the presence of all other executives, if he "carried a drug store in [his] pocket" due to the medication he was required to take on a daily basis resulting from his disabilities.

34. Following Plaintiff's return from his FMLA leave, Plaintiff's supervisor began to blame and reprimand Plaintiff for the condition of the Property, despite the fact that Plaintiff was on leave during the previous 5+ months.

35. This disparate treatment began to occur June 17, 2022, following Plaintiff's return from his FMLA leave.

36. Plaintiff raised these issues to Human Resources on or about July 20, 2022.

37. On or about October 1, 2022, a Marriott employee alleged that Plaintiff became combative with a vendor, Austin Mazor, and that he made an antisemitic remark toward him. Mr. Mastrovalerio could not recall clearly having a conversation with Mr. Mazor but denied having any argument and further denied making this remark. However,

the subsequent investigation determined the remarks were in fact made. On or about October 21, 2022, the Plaintiff was terminated from his position.

38. Mr. Mastrovalerio has and continues to deny this accusation in its entirety and affirms that he and Mr. Mazor continue to have a friendly relationship. Plaintiff maintains that he did not make this remark to any employee and furthermore, states that Mr. Mazor was not at the Hotel that day and had not been there for some time prior to October 1, 2022, or after. During the course of the investigation Plaintiff asked Marriott to contact Mr. Mazor so he might confirm his version of events, but Marriott declined to do so.

39. During the investigation, Plaintiff also communicated his upbringing wherein he regularly attended Hanukkah and other Jewish celebrations with his family members who are Jewish and that he holds no antisemitic feelings whatsoever. Plaintiff has in fact made several donations to Jewish organizations including the Holocaust Museum on Los Angeles since 1986.

40. Despite his exemplary record for nearly 30 years at Marriott, Plaintiff was not given the opportunity for a punishment less severe than termination. The Plaintiff was not afforded the opportunity to take sensitivity training in place of termination, nor was he afforded any kind of less severe disciplinary action such as suspension without pay.

41. Marriott was made entirely aware of Mr. Mastrovalerio's use of FMLA and his short-term memory loss and *used that fact in their adjudication, stating that he did not deny using antisemitic language when he stated he could not remember clearly the interaction*.

8

42. Upon information and belief, Marriott failed to contact the individual with whom the Plaintiff is alleged to have argued with.

43. Although Marriott interviewed the Loss Prevention Officer who is alleged to have heard the remark, his recollection differs considerably from Mr. Mastrovalerio. Upon information and belief, Mr. Mastrovalerio was given no explanation as to why the Loss Prevention Officer's version of events has been given substantially more weight than his own.

44. Mr. Mastrovalerio proceeded with Defendant's internal processes to dispute the decision to terminate his employment. Following several months, he was informed that the termination would stand as is.

45. Mr. Mastrovalerio timely filed a complaint with the EEOC following his dismissal. His right to sue letter was received on or about September 28, 2023.

46. Presently, Mr. Mastrovalerio is employed as a worker at Lowe's Home Improvement as well as a maintenance worker for Marana Unified Schools.

### III.   COUNT I: FAILURE TO ACCOMMODATE A CLAIM

47. Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

48. Mr. Mastrovalerio has sustained severe injuries from an accident on or about February 9, 2022, resulting in multiple surgeries and enduring physical and mental impairments. These impairments include, but are not limited to:

  i.    Short-term memory loss;

  ii.   Vertigo;

9

iii.        Difficulty standing, walking, and climbing stairs;

iv.        A general loss of physical strength

49. The above conditions severely limit Mr. Mastrovalerio's ability to perform major life activities, such as walking, speaking, hearing, and working, categorically qualifying him as a person with a disability under the ADA.

50. Following his accident, the Plaintiff returned to his role on or about June 17, 2022, demonstrating his willingness and capability to resume his professional duties. Mr. Mastrovalerio possesses extensive experience, skills, and education having worked for Marriott for nearly 30 years I various engineering and management capacities. In this regard, Mr. Mastrovalerio is "qualified" under the contemplation of the ADA.

51. Marriott was explicitly informed of the Plaintiff's disabilities substantiated by **Exhibit B** referenced above as well as direct communication.

52. Despite Marriott's awareness, they failed to provide necessary and reasonable accommodations to Mr. Mastrovalerio such as those presented above such as minimizing walking, stair climbing, and particularly the relocation of his office to the first floor to avoid stairs. These requests were either ignored or not addressed.

53. Marriott's actions, including requiring Mr. Mastrovalerio to attend meetings on different floors and ignoring his accommodation requests, directly contravened the ADA's requirements for employers to modify work conditions and practices to accommodate employees with disabilities.

54. The failure to accommodate Mr. Mastrovalerio's disability no only impeded his ability to perform his job effectively, but also contributed to a work environment

unsupportive and non-accommodative of his disability related needs and ultimately led to his improper termination.

## IV.     COUNT II:  RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

55.     Plaintiff hereby references and incorporates each preceding statement as if fully set forth hereat.

56.     Plaintiff exercised his FMLA rights by taking FMLA leave following his accident in February 2022 until his return to work on or about July 17, 2022.

57.     Plaintiff was qualified for his position and had performed his job duties effectively prior to the acts complaint of herein.

58.     Plaintiff suffered an adverse employment action in that he was subjected to disparate treatment, including but not limited to blame and reprimand for the condition of the Property, which arose during the time he was on leave, investigated, and ultimately terminated.

59.     Defendant's disparate treatment began within days after Plaintiff returned to work from FMLA leave.

60.     Defendant's decision to terminate Plaintiff's employment occurred only four (4) months after Plaintiff complained of such disparate treatment to Human Resources.

61.     Defendant terminated Plaintiff because, at least in part, he utilized FMLA leave and complained of the disparate treatment resulting from his use of FMLA leave.

62.     Defendant's conduct constitutes unlawful retaliation against Plaintiff in violation of Plaintiff's rights under the FMLA. 29 U.S.C. §2615(a).

11

63. As a result of Defendant's wrongful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses, including expenses related to additional medical treatment and past and future lost wages and benefits. Plaintiff is also entitled to liquidated damages, attorneys' fees and costs, and other damages as recoverable by law. The Plaintiff wishes to reiterate that he had spent nearly 30 years with Marriott, however, following his return to work on June 17, 2022 he was terminated only four (4) months later, demonstrating a link between his request for accommodation and his termination.

## V.  SUPPLEMENTAL JURISDICTION UNDER 28 U.S.C. § 1367

64. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The state law claims form part of the same case or controversy as the claims arising under the ADA, which provides this court with original jurisdiction.

## PRAYER FOR RELIEF

**WHEREFORE**, having fully pled this Complaint the Plaintiff prays the following relief from the Court:

A. For all damages allowable at law under any and all theories applicable including actual, consequential, compensatory, liquidated and punitive damages in an amount to be determined at trial but for not-less-than $525,404.88;

B. A change in Plaintiff's status with Marriott from "Terminated" to "Resigned" or similar verbiage;

C. For an award of all Plaintiff's costs and attorney's fees incurred in this action under any and all applicable legal theories;

D. For any and all other relief that is just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that upon trial of this action, all issues be submitted to and determined by a jury except those issues expressly reserved by law for determination by the Court.

**RESPECTFULLY SUBMITTED** this 30th day of April 2024.

**COUNXEL LEGAL FIRM**

*/s/ Timothy Coons*
Timothy Coons
Aaron S. Ludwig
Cameron Mitchell
2222 South Dobson Road Suite 1104
Mesa, Arizona 85202
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF Registrant:

L. Eric Dowell
Jessica A. Phipps
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ  85016
*Attorneys for Defendant Marriott International, Inc.*

*/s/ Tanika Sherman*